# AFFIDAVIT OF SPECIAL AGENT DOMINIC GROSS IN SUPPORT OF A CRIMINAL COMPLAINT

I, Dominic Gross, being duly sworn, state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I have been a Special Agent of the Federal Bureau of Investigation ("FBI") since July 2015. I am currently assigned to the Economic Crimes Squad in the FBI's Boston Field Office, where I investigate possible violations of federal law, including wire fraud, bank fraud, money laundering, intellectual property rights violations, bankruptcy fraud, and mortgage fraud. I have received on-the-job training as well as FBI-sponsored training related to these types of investigations, and I have participated in the execution of search, seizure, and arrest warrants related to criminal investigations. My investigations and training have included the use of surveillance techniques, confidential informants, and court-authorized interception of wire and electronic communications.

2.     As an FBI Special Agent, I am empowered by law to investigate violations of the laws of the United States, and I am a law enforcement officer with authority to execute arrest and search warrants issued under authority of the United States.

3.     I am currently conducting an investigation of FESNEL LAFORTUNE (also known as "Richard" or "Ritchy") ("LAFORTUNE") and others for violations of certain federal laws, including bank fraud, wire fraud, money laundering, and aggravated identity theft.

4.     I make this affidavit in support of a criminal complaint charging LAFORTUNE with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349. Specifically, as set forth below, I have probable cause to believe that in or around April 2017, LAFORTUNE conspired with others to execute a scheme to fraudulently obtain money under the custody and control of Santander Bank, N.A. ("Santander Bank"), a financial institution as defined in 18 U.S.C. § 20.

5. The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses. This affidavit is intended to show merely that there is probable cause for the requested criminal complaint and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE TO BELIEVE THAT A FEDERAL CRIME WAS COMMITTED BY LAFORTUNE

6. LAFORTUNE is currently a resident of Massachusetts.

7. Based on my investigation—including my review of bank records and surveillance photos, information provided by a cooperating witness ("CW-1"),[1] and interviews with the victims set forth below—I am aware that in or around April 2017, LAFORTUNE engaged in a scheme to fraudulently obtain money from a revocable trust account controlled by Victim 1, an individual customer of Santander Bank.

8. The scheme generally worked as follows:

   a. CW-1 asked for the assistance of a bank teller, Co-conspirator 1 ("CC-1"), to conduct fraudulent transactions at the Santander Bank branch located in the area of Uphams Corner in Dorchester, Massachusetts ("the Uphams Corner

---

[1] On May 7, 2019, pursuant to a written plea agreement with the government, CW-1 pleaded guilty to charges of conspiracy to commit bank fraud and aiding and abetting aggravated identity theft for his role in the scheme discussed herein. CW-1 has also entered into a cooperation agreement with the government, pursuant to which the government has agreed that should CW-1 provide substantial assistance in the investigation or prosecution of others, the government will file a motion under Section 5K1.1 of the U.S. Sentencing Guidelines to recommend that the court impose a sentence below the advisory Guidelines sentencing range and, if deemed appropriate, to also file a motion under 18 U.S.C. § 3553(e) to enable the court to impose a sentence below the statutory mandatory minimum. Pursuant to the terms of the cooperation agreement, the government has also agreed not to use any information provided by CW-1 against him in any criminal case (with certain exceptions). The information provided by CW-1 regarding LAFORTUNE is corroborated by bank records and surveillance photos.

Branch"), where CC-1 was employed. CC-1 agreed to facilitate fraudulent transactions.

b. CW-1 and others arranged for another individual, Co-conspirator 2 ("CC-2"), to use fraudulent identification to conduct unauthorized transactions from Victim 1's account at Santander Bank, with the assistance of CC-1.

c. CW-1 provided LAFORTUNE with a fraudulently obtained check in the amount of $175,500 drawn on Victim 1's Santander Bank account and made payable to a purported business by the name of IMS Intellibound Inc. ("IMS Intellibound").

d. LAFORTUNE deposited the aforementioned check into one of two accounts he had previously opened at TD Bank, N.A. ("TD Bank") in the name of IMS Intellibound. Shortly thereafter, LAFORTUNE withdrew a total of $28,700 in cash from the account into which he had deposited the check and the second TD Bank account he had opened in the name of IMS Intellibound, into which some of the funds from the deposited check were electronically transferred.

9. As part of the scheme, on or about April 26, 2017, LAFORTUNE went with CW-1 to a TD Bank branch in West Roxbury, Massachusetts, where LAFORTUNE opened two business checking accounts, ending in 9642 ("TD-9642") and 9668 ("TD-9668"), in the name of IMS Intellibound. Bank records show that LAFORTUNE used the name, date of birth, and social security number of another individual ("Victim 2") to open the accounts. Victim 2 was listed as IMS Intellibound's purported owner and the sole authorized signer on both accounts.

10. On or about April 27, 2017, at the direction of CW-1 and others, CC-2 approached CC-1 inside the Uphams Corner Branch of Santander Bank and provided CC-1 with a passport

and major credit card in the name of Victim 1. CC-2 obtained two bank checks drawn on Victim 1's Santander Bank revocable trust account ending in 9180 ("SANT-9180"), one in the amount of $175,500 and a second in the amount of $165,000. The $175,500 check was made payable to IMS Intellibound. CC-2 also withdrew $9,600 in cash from SANT-9180.

11.   Victim 1 was interviewed and confirmed that the transactions described above were fraudulent, and that he did not authorize anyone to access his account.

12.   Based on information provided by CW-1, I am aware that CW-1 provided the $175,500 Santander Bank check to LAFORTUNE to be deposited. Bank records show that on or about the same day—April 27, 2017—the check was deposited into TD-9642 at a TD Bank branch in the Central Square area of Cambridge, Massachusetts. Victim 2's name was written on the deposit ticket and signed on the back of the check.

13.   On or about April 28, 2017, $34,523 was electronically transferred from TD-9642 to TD-9668.

14.   On or about April 29, 2017, LAFORTUNE went to a TD Bank branch in West Roxbury, Massachusetts and withdrew $9,500 in cash from TD-9668. LAFORTUNE signed the withdrawal ticket as Victim 2.

15.   On or about the same day—April 29, 2017—LAFORTUNE went to a TD bank branch in Quincy, Massachusetts and withdrew $9,500 in cash from TD-9642, again signing the withdrawal ticket as Victim 2. The withdrawal ticket for this transaction references a California driver's license number and expiration date matching those of a counterfeit California driver's license bearing the name and date of birth of Victim 2 that LAFORTUNE used to open separate accounts at Santander Bank in the name of IMS Intellibound. In my experience, such a notation

on a withdrawal ticket typically indicates that the purported bank customer presented identification—in this case a driver's license—to make the withdrawal.

16. On or about April 30, 2017, LAFORTUNE went to a TD bank branch in Braintree, Massachusetts and withdrew $9,700 in cash from TD-9668, again signing the withdrawal ticket as Victim 2. The withdrawal ticket for this transaction references the same California driver's license number and expiration date as referenced on the withdrawal ticket for the April 29, 2017 transaction described above. Again, in my experience, such a notation typically indicates that a driver's license was presented to the bank teller in connection with the withdrawal.

17. I have reviewed bank surveillance photos from each of the three withdrawals described above and compared them with known photographs of LAFORTUNE, as well as with photographs identified by CW-1 as LAFORTUNE, to confirm they match. The surveillance image from the second withdrawal is blurry, but the handwriting and signature on the withdrawal slip appears to match those on the other two withdrawal slips.

18. Victim 2 was interviewed and confirmed that he has never had a California driver's license, has never had personal or business accounts at Santander Bank or TD Bank, and has never heard of IMS Intellibound. Victim 2 further confirmed that he did not authorize bank accounts to be opened in his name.

## CONCLUSION

19. Based on my knowledge, training, and experience, and the facts set forth in this affidavit, I respectfully submit that there is probable cause to believe that LAFORTUNE conspired to commit bank fraud, in violation of Title 18, United States Code, Section 1349.

                Respectfully submitted,

                Dominic Gross
                Special Agent
                Federal Bureau of Investigation

Subscribed and sworn to before me
on July __8__, 2019

David H. Hennessy
United States Magistrate Judge